[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-12647

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 11, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00515-CV-ORL-22KRS

DONTRAY CHANEY,

Plaintiff-Appellant,

versus

CITY OF ORLANDO, FLORIDA,
a municipal corporation, and
JONATHAN CUTE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(April 11, 2007)**

Before BIRCH and PRYOR, Circuit Judges, and NANGLE,[*] District Judge.

BIRCH, Circuit Judge:

Plaintiff-Appellant Dontray Chaney brought an action, pursuant to 42 U.S.C. § 1983, against the City of Orlando, Florida, and Officer Jonathan Cute, an Orlando police officer, alleging claims for wrongful arrest, excessive force, and malicious prosecution. After the jury returned a special verdict in Chaney's favor, Officer Cute made a renewed motion for judgment as a matter of law, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, which the district court granted. Because we conclude that the district court erred in granting Officer Cute's renewed motion for judgment as a matter of law, we REVERSE the district court's judgment as to Officer Cute and REMAND this case for further proceedings consistent with this opinion.

## I. BACKGROUND

The evidence adduced at trial, which we must view in a light most favorable to Chaney as the party against whom judgment was entered as a matter of law, is as follows. In the early evening of 5 June 2003, Chaney was en route to Mercy Market, a convenience store located at 1430 Mercy Drive in Orlando, to pick up a few items. Chaney was driving a 1996 Pontiac Grand Am that belonged to his

---

[*] Honorable John F. Nangle, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation.

cousin, Antawain Green. The Grand Am had a plastic cover over the vehicle's rear license tags. After Chaney made a right turn onto Mercy Drive from the Palms Apartment complex, Officer Cute stopped him. Officer Cute illuminated his police cruiser's blue lights, and Chaney pulled the Grand Am into the parking lot of the Mercy Market and placed it in park.

After stopping the vehicle, Chaney opened his car door and began to exit the vehicle in an attempt to ascertain the reason for the traffic stop. At that time Chaney was holding his license in his hand. As Chaney was stepping out of the car, Officer Cute, who was approximately four to five feet away and was fast approaching, told Chaney to "get back in the fucking car." R14 at 8; R3-65, Exh. 1 at 13. Chaney then sat back down in the driver's seat, placed his feet back inside the vehicle with the driver side door still "cracked," and placed his hands in his lap with his driver's license in his hand. Chaney asked Officer Cute the reason for the stop, but instead of answering him, Officer Cute reached into the vehicle to pull the keys out of the car's ignition. Chaney attempted to stop Officer Cute by placing his hand over the ignition, and asked the officer what he was doing. Officer Cute then grabbed Chaney's arm and twisted it behind his back, grabbed Chaney by the neck in a "choke hold," and pulled Chaney out of the car. R14 at 9; R3-65, Exh. 1 at 15.

3

After pulling Chaney out of the vehicle, Officer Cute dropped Chaney to the ground and placed his knee between Chaney's shoulder blades in an attempt to pin Chaney on his stomach. Officer Cute placed one of Chaney's hands in handcuffs. Officer Cute then held a "Taser"[1] to Chaney's head and asked Chaney: "do [you] want some?" R14 at 10. Chaney testified that he did not attempt to resist arrest or struggle with Officer Cute while he was pinned to the ground, but that he again asked Officer Cute what he was doing. At this time, only one of Chaney's hands had been placed in handcuffs; Chaney's other hand was still loose. Officer Cute then stood up and, with Chaney still pinned on the ground, tased him. Chaney testified that being tased caused him to lose control over his body, and that he "felt like [he] was going to die." R3-65, Exh.1 at 17-18.

After being tased, Chaney rolled over onto his back and attempted to sit up, but Officer Cute tased Chaney a second time and rolled him back onto his stomach. Officer Cute then placed his foot on Chaney's head and "squish[ed]" it on the

---

[1] The term "Taser" refers to an electronic device used to subdue persons without causing fatal harm. A Taser is a battery-charged unit approximately the size and appearance of a flashlight. It holds two replaceable cartridges, each containing a hooked barb, or dart, attached to the cartridge by a long, electricity-conducting insulated wire. Each dart can be fired independently by depressing the corresponding lever located on the frame of the Taser. When the probes make contact with the target, the Taser transmits high voltage electrical current along the wires and into the body of the target. In addition, after the Taser's initial "shot" has been fired and contact has been made, an electrical current may be transmitted through the wire to the target by repeatedly pressing on the Taser's lever. See Draper v. Reynolds, 369 F.3d 1270, 1273 n.3 (11th Cir. 2004) (describing a Taser); Russo v. City of Cincinnati, 953 F.2d 1036, 1040 n.1 (6th Cir. 1992) (same).

pavement "like he put out a cigarette," R14 at 13, which caused an abrasion on Chaney's cheek. Officer Cute placed the other handcuff on Chaney's loose hand. Chaney remained on the ground while other officers arrived at the scene. Chaney claims that he recalls an officer, apparently one of Officer Cute's superiors, arriving at the scene and telling Officer Cute that "[Chaney] didn't need to be [t]ased any more." R3-65, Exh.1 at 19. Chaney was helped up from the ground and was led to a police cruiser.

At this point a crowd of onlookers had gathered at the Mercy Market. As the officers led Chaney to a police car, he asked a member of the crowd if she would call his mother and tell her what had happened to him. The bystander asked Chaney for his phone number. As Chaney began to answer, Officer Cute "grabbed . . . a pressure point in [Chaney's] throat by [his] Adam's apple," and told him "don't say a fucking word." R14 at 14. Officer Cute then slammed Chaney's head onto the trunk of the police cruiser.

Chaney was subsequently taken to a location near the incident, for further questioning. Chaney testified that, en route, an officer in the cruiser asked him: "how did the fucking Taser feel?" R3-165, Exh. 1 at 23. After sitting in the cruiser for a short time, Chaney was taken to a warehouse area, where he met with a Sergeant in the Orlando Police Department and was asked a series of questions

about the tasing incident. The officers took pictures of Chaney's wounds; they removed the Taser hooks out of Chaney's back (they had been lodged in his back for approximately 15 minutes); and took detailed notes on Chaney's version of events. At that time, Chaney was informed that Officer Cute had stated that he had stopped Chaney because the rear license tag cover on the Grand Am had been obscured. Chaney disputed this allegation, telling the Sergeant that the license tag was not obscured. When Chaney was told that he was going to be taken to jail, he asked the Sergeant if he would personally transport him to the station, because he was uncomfortable riding in the same car with Officer Cute. Chaney was informed, however, that, as the arresting officer, Officer Cute was required to take him to the station.

Officer Cute transported Chaney to the Orange County Correctional Facility without incident. Chaney was given a traffic citation for operating a vehicle with an obscured license plate, in violation of Fla. Stat. § 316.605.[2] He was also charged with the misdemeanor offense of resisting an officer without violence, in

---

[2] That provision states, in pertinent part, that "all letters, numerals, printing, writing, and other identification marks upon the [license] plates regarding the word 'Florida,' the registration decal, and the alphanumeric designation shall be clear and distinct and free from defacement, mutilation, grease, and other obscuring matter, so that they will be plainly visible and legible at all times 100 feet from the rear or front. Nothing shall be placed upon the face of a Florida plate except as permitted by law or by rule or regulation of a governmental agency. . . . A violation of this subsection is a noncriminal traffic infraction, punishable as a nonmoving violation . . . ."

violation of Fla. Stat. § 843.02.[3]  A traffic court later found Chaney not guilty of driving with an obscured license.  The charge for resisting an officer without violence was nolle prossed.

In March 2004 Chaney brought the present § 1983 action in the Ninth Judicial Circuit of Orange County, Florida against Officer Cute and the City of Orlando.  Chaney's amended complaint alleged claims against Officer Cute for wrongful arrest, excessive force, and malicious prosecution in pursuing the traffic violation, all in violation of Chaney's Fourth Amendment rights.  He also lodged three counts against the City of Orlando, alleging that the excessive use of Tasers by Orlando police officers was an official custom or policy of the Department; that the Department failed to properly train its officers in the use of Tasers; and that the Department failed to monitor officers who used Tasers in an excessive manner. The defendants removed the action to the Middle District of Florida.

A four-day jury trial was held in March 2006.  At the close of Chaney's case-in-chief, Officer Cute moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a).  The court denied that motion.  Officer Cute renewed this motion at the close of all of the evidence.  The court reserved a ruling

---

[3] That statute states that "[w]hoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree."

7

on that motion, and submitted the case to the jury.

After reading the jury its instructions, the court directed the jury to make findings on a special verdict form. The special verdict form contained a number of specific issues for the jury to decide. The jury made the following pertinent findings. First, the jury found that Officer Cute "reasonably believed that the tag of the vehicle driven by [Chaney] was obstructed in violation of Florida law when he stopped [Chaney]." R9-152 at 1. Second, the jury found that Officer Cute "reasonably believed that [Chaney] resisted his lawful directives or attempted arrest." Id. Third, the jury found that Officer Cute "intentionally committed acts that violated [Chaney]'s federal constitutional right not to be subjected to excessive force," and that Officer Cute "used unreasonable force" both in effecting the arrest of Chaney and in tasing him. Id. at 2. Fourth, the jury found that Officer Cute "acted with malice in pursuing the traffic citation against [Chaney]." Id. Separately, the jury found that the City of Orlando did not have any "custom or policy that resulted in the constitutional violations" that Chaney suffered at the hands of Officer Cute. Id.

The jury then imposed nominal damages ($972.15) to compensate for the cost of Chaney's post-incident medical treatment; for his bond; and for his having to defend against the traffic citation. Id. at 3. The jury also imposed punitive

damages against Officer Cute in the amount of $100,000, based on its finding that Officer Cute had acted with malice or reckless indifference to Chaney's rights. Id. After the verdict, Officer Cute made a renewed motion for judgment as a matter of law pursuant to Rule 50(b), based on a theory of qualified immunity. Separately, Officer Cute moved for a new trial, pursuant to Rule 59, on the basis of qualified immunity, alleged inconsistencies in the jury verdict, and the contention that the punitive damages award was excessive.

The district court addressed Officer Cute's renewed motion for judgment as a matter of law in a detailed order. With respect to Chaney's wrongful arrest count, the court observed that "[t]he jury found that Officer Cute reasonably believed that [Chaney] resisted Officer Cute's lawful directives or attempted arrest." R9-165 at 11. The court reasoned that because an arrest supported by probable cause is, by law, not a "wrongful arrest" in violation of the Fourth Amendment,[4] and because, according to the court, the jury's verdict had made clear that Officer Cute had probable cause to arrest Chaney for resisting, the court concluded that Chaney's wrongful arrest claim failed. The court then granted Officer Cute judgment as a matter of law on that count.

---

[4] See, e.g., Atwater v. City of Lago Vista, 532 U.S. 318, 354, 121 S. Ct. 1536, 1557 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

With respect to Chaney's excessive force count, the court noted that the jury had concluded that Officer Cute had probable cause to arrest Chaney, but had nevertheless found that the force used by Chaney was excessive. The court observed, however, that it was obligated to determine whether Chaney was entitled to qualified immunity as a matter of law on the excessive force count. The court thus applied the two-part analysis set forth in Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001), assessing whether the facts alleged, taken in the light most favorable to the party asserting the injury, showed that the officer's conduct violated a constitutional right, and, if so, whether that right was clearly established under federal law.

Applying the Saucier analysis, the court first suggested that it was unclear whether Officer Cute's conduct was excessive as a matter of law, or whether it was de minimis so as to fail to implicate Chaney's Fourth Amendment rights.[5] The court then reverted to the fact that "the jury concluded that Officer Cute had probable cause and the authority to make the arrest," and stated that "[t]he authority to make an arrest permits an officer to use reasonable force." R9-165 at 18. In light of the jury finding that probable cause existed, the court concluded that

---

[5] See Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000) ("[T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment.") (alteration added).

10

the force used by Officer Cute in connection with a lawful arrest was reasonable under the circumstances, and that therefore Chaney's constitutional rights had not been violated.

As to the second step of the Saucier framework–whether the right not to be tasered was clearly established–the court found that there was no case law in this circuit recognizing such a right. And with respect to a more general right to be free from excessive force at the hands of police officers, the court reiterated that the jury had found that Officer Cute had probable cause to make his arrest, and that, "consequently," the force used was reasonable under the circumstances. As a result, the court concluded that Officer Cute was entitled to qualified immunity on Chaney's excessive force count, and granted Officer Cute's renewed motion for judgment as a matter of law.

Finally, with respect to the malicious prosecution count based on Chaney's alleged traffic violation, the court again concluded that the jury had found that Officer Cute had probable cause to effectuate the traffic stop, and that, because a malicious prosecution action under Florida law requires an absence of probable cause,[6] Chaney's malicious prosecution count was not viable. Relying on the

_____

[6] See Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004) (applying Florida law).

11

jury's finding that Officer Cute had probable cause, the court granted Officer Cute's renewed motion for judgment as a matter of law on the malicious prosecution count.

After granting Officer Cute's renewed motion for judgment as a matter of law on the three counts pending against him, the district court then entered final judgment in favor of Officer Cute and the City of Orlando.[7] The court never addressed the alternative motion for a new trial. This appeal followed.

## II. DISCUSSION

A. <u>District Court's Order Granting Officer Cute Judgment as a Matter of Law</u>

Chaney argues that the district court erred in granting Officer Cute's renewed motion for judgment as a matter of law. We review a district court's ruling on a motion for judgment as a matter of law <u>de</u> <u>novo</u>. <u>See</u> <u>Doe v. Celebrity Cruises, Inc.</u>, 394 F.3d 891, 902 (11th Cir. 2004) (citation omitted). Under Rule 50, "[a] party's motion for judgment as a matter of law can be granted at the close of evidence or, if timely renewed, after the jury has returned its verdict, as long as

---

[7] Defendant-Appellee City of Orlando did not file a motion for judgment as a matter of law in this case. The district court's entry of final judgment in favor of the City of Orlando–based on the jury's express finding in Interrogatory #6 that there was no custom or policy in place that condoned excessive force by Orlando police officers–has not been appealed, nor is it implicated by our review of the court's analysis as to Officer Cute's Rule 50(b) motion. Thus, our decision addresses the court's decision to grant Officer Cute's renewed motion for judgment as a matter of law; we do not disturb the court's separate entry of final judgment in favor of the City of Orlando.

'there is no legally sufficient evidentiary basis for a reasonable jury to find'" for the non-moving party. Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (citing Fed. R. Civ. P. 50).

Regardless of timing, however, in deciding on a Rule 50 motion a district court's proper analysis is squarely and narrowly focused on the sufficiency of evidence. The question before the district court regarding a motion for judgment as a matter of law remains whether the evidence is "legally sufficient to find for the party on that issue," Fed. R. Civ. P. 50(a)(1), regardless of whether the district court's analysis is undertaken before or after submitting the case to the jury. See Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192 (11th Cir. 2004) (stating that judgment as a matter of law should only be granted "when there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue"); Arthur Pew Constr. Co. v. Lipscomb, 965 F.2d 1559, 1563 (11th Cir. 1992) (stating that the "usual inquiry" under Rule 50 is "sufficiency, i.e. whether the evidence was sufficient to submit [the issue] to the jury"); see also 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2537 (2d ed. 1995) (stating that "[t]he standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion [under 50(a)]"). Accordingly, we have stated that in

ruling on a party's renewed motion under Rule 50(b) after the jury has rendered a verdict, a court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence. See Lipphardt, 267 F.3d at 1186 (citation omitted); Arthur Pew, 965 F.2d at 1563.

In this case, the jury rendered a verdict in Chaney's favor, awarding $100,000 in damages based on its finding that Officer Cute had acted with malice or reckless indifference to Chaney's rights. Subsequent to this verdict, Officer Cute renewed his motion for judgment as a matter of law on the basis of qualified immunity, having already made this argument at the close of Chaney's case and again at the close of all of the evidence.

In this case, the district court, in ruling on Officer Cute's renewed motion for judgment as a matter of law, effectively based its conclusions on the jury findings contained in the special verdict form. In discussing Chaney's count for wrongful arrest, for example, the court observed that the *jury* had found that Officer Cute had probable cause that Chaney was resisting arrest, and then stated, "[s]ince Officer Cute had probable cause [Chaney]'s cause of action for false arrest fails." R9-165 at 11. Likewise, in discussing Chaney's claim for excessive force, the court again observed the *jury* had found that Officer Cute had probable cause to arrest Chaney, and that therefore Officer Cute was entitled to use a reasonable

14

amount of force in connection with that arrest. Id. at 18, 23. In light of the jury's finding that probable cause existed–as well as the court's separate conclusion that the force used was reasonable under the totality of the circumstances–the court granted qualified immunity to Officer Cute on the excessive force count. Finally, in assessing Chaney's malicious prosecution count, the court once again observed that the *jury* had found that Officer Cute had probable cause to effectuate the traffic stop. Relying on the jury finding that there was probable cause to initiate the traffic stop, the court concluded that Chaney's malicious prosecution claim also failed as a matter of law. Id. at 12.

The court's order granting Officer Cute's renewed motion for judgment as a matter of law was predicated almost entirely on the special findings that the jury had made on the verdict form, and not on an assessment of whether there was sufficient evidence from which a reasonable jury could have rendered a verdict in Chaney's favor. The court based its conclusions–in whole or in part–on the jury's determination that Officer Cute had acted with probable cause. In doing so, the court failed to comport with the proper legal standard for ruling on a motion pursuant to Rule 50 and impermissibly credited the jury's findings.

The fact that Rule 50(b) uses the word "renew[ed]" makes clear that a Rule 50(b) motion should be decided in the same way it would have been decided prior

to the jury's verdict, and that the jury's particular findings are not germane to the legal analysis. See, e.g., Celebrity Cruises, 394 F.3d at 903 ("This Court repeatedly has made clear that any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury."); Caban-Wheeler v. Elsea, 71 F.3d 837, 842 (11th Cir. 1996) (stating that a Rule 50(b) motion "may be used to renew consideration of issues initially raised in a pre-verdict motion [under Rule 50(a)]," but that the court cannot consider matters not raised in the initial motion). The jury's findings should be excluded from the decision-making calculus on a Rule 50(b) motion, other than to ask whether there was sufficient evidence, as a legal matter, from which a reasonable jury could find for the party who prevailed at trial.

Here, in ruling on Officer Cute's renewed motion under Rule 50(b), the court should have limited its inquiry as to whether there was sufficient evidence in the record to support a jury's finding of excessive force and its imposition of liability on Officer Cute. By placing an undue emphasis on the jury's particular findings as to probable cause–and by repeatedly making decisions on the Rule 50 motion through the lens of what the jury found–the court engaged in an erroneous

16

analysis in deciding Officer Cute's renewed motion for judgment as a matter of law. As a result, we conclude that the analysis of district court's judgment granting Officer Cute judgment as a matter of law was flawed and that the judgment must be reversed. We remand this case to permit the district court to address Officer Cute's renewed motion in a manner consistent with this opinion.

B. <u>District Court's Failure to Decide Officer Cute's Motion For a New Trial</u>

The district court also failed to rule on Officer Cute's motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Officer Cute's motion sought a new trial on the basis of qualified immunity, as well as on the grounds that the verdict was inconsistent and the punitive damages award was excessive.

Rule 50, which permits a party to "alternatively request a new trial" in connection with a motion for judgment as a matter of law, Fed. R. Civ. P. 50(b), makes clear that

> [i]f the renewed motion for judgment as a matter of law is granted, the court ***shall*** *also rule on the motion for a new trial, if any,* by determining whether it should be granted if the judgment is thereafter vacated or reversed, and ***shall*** *specify the grounds for granting or denying the motion for the new trial.*

Fed. R. Civ. P 50(c)(1) (emphasis added). By its plain language, the Rule obligates the court to rule on a motion for a new trial when issuing its ruling on a renewed motion for judgment as a matter of law. Here, the district court failed to do so.

17

Thus we also remand this case to permit the district court to properly consider not only Officer Cute's renewed motion for judgment as a matter of law but also Officer Cute's separate motion for a new trial.

## III.  CONCLUSION

Chaney appealed the district court's judgment as to Officer Cute, contending that the district court erred in granting Officer Cute judgment as a matter of law under Rule 50(b).  Having reviewed the district court's opinion, we conclude that the district court used an improper legal analysis in deciding Officer Cute's renewed motion for judgment as a matter of law.  Specifically, we conclude that the district court's decision placed an undue weight on the findings of the jury as to probable cause.  Because a reliance on the findings of the jury was incompatible with the proper standard for deciding a Rule 50 motion, we **REVERSE** the judgment in favor of Officer Cute and **REMAND** this case for the district court to consider the merits of Officer Cute's renewed motion in a manner consistent with this opinion.  In addition, because the district court failed to rule on Officer Cute's motion for a new trial as mandated by Rule 50(c)(1), we **REMAND** this case for the district court to address the merits of Officer Cute's motion for a new trial.